Linda R. TRIPP, Plaintiff,

v.

DEPARTMENT OF DEFENSE, et al., Defendants.

No. Civ.A. 01–157.

United States District Court, District of Columbia.

March 30, 2002.

David K. Colapinto, Kohn, Kohn & Colapinto, P.C., Washington, DC, for Plaintiff.

Andrea Gacki, U.S. Dept. of Justice, Washington, DC, for Defendants.

### MEMORANDUM OPINION AND ORDER

SULLIVAN, District Judge.

Plaintiff Linda Tripp filed this lawsuit against the United States and the United States Department of Defense ("DOD") pursuant to the Privacy Act, 5. U.S.C. § 552a and the Administrative Procedures Act ("APA"), 5 U.S.C. § 551 *et seq.* and 5 U.S.C. § 701 *et seq.*, for an alleged release of information related to plaintiff's applica-

tion for employment at the George Marshall Center in Germany. Plaintiff claims that the release of information related to her job application to the publication *Stars and Stripes* violated her rights under the Privacy Act as well as the APA because of a reverse Freedom of Information Act ("FOIA") request made by plaintiff to prevent such releases. Plaintiff later amended her complaint to include further Privacy Act and FOIA claims against the DOD, the United States, and the Office of Personnel Management ("OPM").

The case comes before this Court on defendants' original and supplemental Motions to Dismiss and for Summary Judgment. Having considered defendants' motion and supplemental motion, and the oppositions and replies thereto, as well as the applicable statutory and case law, the Court hereby **GRANTS IN PART** and **DENIES IN PART** defendants' motion.

## BACKGROUND

Plaintiff Linda Tripp is a former employee of the federal government, with over 21 years of service in a variety of agencies and positions. Plaintiff's allegations in this case arise out of her pursuit of employment at DOD's George Marshall Center in Germany.[1] At the time she applied for a position at the Marshall Center, plaintiff was employed with the Office of Public Affairs at DOD in a non-career, Schedule C political appointee position. Plaintiff's federal salary level in that position was at the GS–15 level. At the end of the administration of President Bill Clinton, on January 20, 2001, plaintiff was

terminated. Plaintiff was terminated after she refused to tender her resignation, as is customary for political appointees to do at the end of an administration.

Prior to her termination, plaintiff applied for the position of Deputy Director of the Conference Center at the Marshall Center. Plaintiff alleges that in October of 2000, she searched the OPM's website and discovered the Deputy Director opening, which was a career service position. She submitted a written application for that position, including the requisite forms and her resume. Plaintiff was notified a few months later by DOD that she had been certified as one of the top qualified applicants for the position. Plaintiff contacted the Marshall Center by telephone to inquire as to the job application process.

Plaintiff admits that she spoke by phone to Mr. Robert Kennedy, the Marshall Center Director. In that conversation, plaintiff admits that she informed Mr. Kennedy that she was certified as one of the top qualified applicants, and asked questions regarding the selection process. Mr. Kennedy contends that he is not generally involved in the hiring for these positions, and that Mrs. Tripp's phone call was the first he had heard that she was an applicant. Plaintiff contends that during that conversation she did not give Mr. Kennedy or anyone else the authority to disclose to any third parties information related to her job application.

Mrs. Tripp received authorization from DOD to travel to Germany to interview for the position in person. Her travel orders were issued on January 11, 2001, and she

---

1. Mrs. Tripp currently has two other lawsuits against the federal government pending before this Court, in which she alleges violations of the Privacy Act and the Federal Tort Claims Act as a result of information from her security clearance forms that was released to the *New Yorker* magazine. *See Tripp v. Department of Defense,* Civ. Action No. 99– 2554(EGS) (D.D.C.); *Tripp v. United States,* Civ. Action No. 01–506(EGS) (D.D.C.). While plaintiff contends that the incidents complained of here are a part of a larger pattern of violations by the federal government, the factual allegations raised here are indeed distinct from those at issue in those two cases.

was scheduled for leave for January 18 through 26, 2001. On January 23, 2001, plaintiff arrived at the Marshal Center to interview for the Deputy Director position. When she arrived she was handed a copy of that day's *Stars and Stripes* newspaper. *Stars and Stripes* is affiliated with DOD and is overseen by the Director of the American Forces Information Service.[2] The paper featured an article about plaintiff with the headline: "Linda Tripp up for Job at Marshall Center: Controversial figure 1 or [sic] 4 candidates interviewing at security, defense institute in Germany." *See* Plfs' Opp. to Defs' Mot., Ex. 2. The article included the following statements about which plaintiff complains:

(1) Linda R. Tripp, who secretly tape-recorded information that nearly brought down a president, could land a senior-level government job in Germany.

(2) Tripp, who was fired Friday from her Pentagon job, is one of four candidates applying for the conference center deputy director post at the George C. Marshall European Center for Security Studies in Gamusch, Germany, said center officials.

(3) "She's being considered along with fellow candidates for the job," center Director Robert Kennedy said Monday. "I got a call from Ms. Tripp that she was applying, and she wanted to make sure the application was received and to find out where we were in the process."

(4) Kennedy, who could not remember when the telephone conversation took place, said it was before Friday's announcement that she lost her high-paying Pentagon job.

(5) Tripp was fired from her GS–15 position in the public affairs office at the Pentagon, where she reportedly earned $98,744.

(6) The deputy director's position in Germany for which she is applying is a GS–14.

(7) However, under "save pay" rules, Tripp might not have to give up the higher salary for at least two years, a Pentagon spokeswoman said.

(8) Kennedy, who will not be involved in the interviewing process for the position, declared the historical brouhaha surrounding Tripp would not be factored into the consideration.

(9) Tripp left Washington, D.C., on Thursday for the interview, scheduled to take place on Monday.

(10) Sources close to the Center said three other people, all retired military officers, are also vying for the same position.

*Id.*

Plaintiff contends that this article was published in the European and Pacific print editions of *Stars and Stripes,* the on-line edition of the European edition of *Stars and Stripes,* and in the electronic "Early Bird" on-line and e-mail publication distributed by DOD. It is undisputed that plaintiff was not selected for the Deputy Director position at the Marshal Center.

Prior to her termination from federal employment, on January 6, 2000, plaintiff's counsel had submitted letters to President Clinton, Attorney General Janet Reno, and DOD on plaintiff's behalf in the form of a "reverse FOIA" request. The letters requested that "no information be released to the news media directly or indirectly related to Mrs. Tripp, unless that information is properly requested under" the FOIA. The letter also noted plaintiffs objections under the Privacy Act to the dis-

---

**2.** The Director of AFIS at the relevant time was Clifford Bernath, who was a named defendant in *Tripp v. Department of Defense,* Civ. Action No. 99–2554(EGS), prior to this Court's dismissing the charges against him. Plaintiff has not alleged any wrongdoing by Mr. Bernath in this case.

semination of any information related to herself. Mrs. Tripp also requested permission to review any files related to herself prior to their release in response to a FOIA request.

On January 25, 2001, plaintiff filed this lawsuit, alleging that DOD officials violated her Privacy Act rights by disclosing information to *Stars and Stripes* that was contained in a Privacy Act system of records. Plaintiff also alleges that DOD failed to take necessary efforts to ensure the accuracy of the released information, to establish adequate rules for personnel with respect to the Privacy Act, and to establish sufficient safeguards to prevent unauthorized disclosures. Plaintiff also alleges a violation of the APA as a result of the violation of her reverse FOIA request to DOD. On March 26, 2001, defendant filed its Motion to Dismiss and for Summary Judgment.

On May 22, 2001, plaintiff filed an Amended Complaint. In that Amended Complaint, plaintiff included several new factual allegations. In particular, on February 11, 2000, the *Washington Post* published an article entitled "No Low Profile, Linda Tripp's $98,744 Salary, Perks Draw Attention." Plaintiff argues that this article contained information about plaintiff's job performance, time, attendance, and approved leave that was protected by the Privacy Act. Plaintiff also alleges that after receiving the January 6, 2000 letter from plaintiff's counsel, DOD released Privacy–Act protected information to Representative James P. Moran, Jr.

The Amended Complaint also includes a new claim under FOIA and the Privacy Act based on plaintiff's request for documents from DOD and OPM. Plaintiff alleges that on January 25, 2001 she requested by letter addressed to Donald Rumsfeld, Secretary of Defense, pursuant to FOIA and the Privacy Act, records related to the following:

- plaintiff;
- plaintiff's status as a federal employee;
- all communications between the Department of Defense and the White House directly or indirectly related to plaintiff between January 6, 2000 and the present;
- all documents directly or indirectly related to any Privacy Act violations concerning plaintiff;
- all documents directly or indirectly related to plaintiff and/or her employment status for the time period of January 15, 2001 to the present;
- all documents directly or indirectly related to the plaintiff's application for employment with the Marshall Center and/or her interview with the Marshall Center and/or her travel to the Marshall Center;
- all documents directly or indirectly related to the release of information concerning plaintiff in January 2001 to *Stars and Stripes,* the Early Bird, the Armed Forces Information Service, Sandra Jontz of the Washington Bureau of *Stars and Stripes,* and/or any other person outside the DOD Manpower Data Center;
- all documents that are in the possession or control of DOD, Sandra Jontz, *Stars and Stripes,* the Early Bird, AFIS, Mr. Clifford Bernath, Rear Admiral Craig Quigley, the Office of the Secretary of Defense, and or the Office of Public Affairs that relate directly or indirectly to plaintiff and/or the release of information concerning plaintiff in January 2001 to Stars and Stripes, the Early Bird, the AFIS and/or Sandra Jontz;
- all documents directly or indirectly related to implementation of the Memorandum of Director Administration & Management from Secretary William Cohen dated May 25, 2000 regarding "Training on the Privacy Act."

That letter also requested a waiver of fees and expedited processing. By letter of January 31, 2001, DOD denied plaintiff's request for a fee waiver and expedited processing and stated that DOD was discontinuing the processing of plaintiff's request because she had not demonstrated a willingness to pay the fees. Plaintiff filed an administrative appeal by letter dated February 15, 2001. DOD notified plaintiff on February 25, 2001 that it would resume processing her request. In March 2001, plaintiff appealed the constructive denial of her FOIA and Privacy Act requests, the request for expedited processing, and the fee waiver. On March 21, 2001, DOD responded with an estimate of $1,253.15 for records within the Office of the Secretary of Defense. On March 28, 2001, plaintiff requested an appeal by OPM of the denial of her request. OPM denied that appeal on April 10, 2001. On April 11, 2001 DOD responded that plaintiff had been provided all responsive records from any Privacy Act systems, and thus the Privacy Act portion of plaintiff's request was complete. On May 1, 2002, DOD notified plaintiff that her request was "closed" because of plaintiff's failure to pay fees. Plaintiff alleges that both DOD and OPM have denied her FOIA and Privacy Act requests, her request for expedited processing, and her request for a fee waiver. She asks the Court to issue declaratory relief with respect to the illegality of the agency action, and injunctive relief ordering expedited processing and enjoining the withholding of responsive records and from charging fees.

## DISCUSSION

### I. Standard of Review for Motions to Dismiss and for Summary Judgment

The Court will not grant a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994). Accordingly, at this stage in the proceedings, the Court accepts as true all of the Complaint's factual allegations. *See Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1102 (D.C.Cir.1985). Plaintiff is entitled to "the benefit of all inferences that can be derived from the facts alleged." *Kowal*, 16 F.3d at 1276.

Summary judgment should be granted only if the moving party has shown that there is no genuine issue of material fact and that the moving party is entitled to judgement as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Aka v. Washington Hosp. Ctr.*, 116 F.3d 876, 879 (D.C.Cir.1997). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### II. Privacy Act Claims

Plaintiff's original and Amended Complaints together raise several different claims under the Privacy Act. The defendants have either moved to dismiss or moved for summary judgment with respect to all of them.

#### A. *Stars and Stripes* Article

Plaintiff alleges that much of the information about plaintiff contained in the *Stars and Stripes* article she received upon arrival in Germany, including the ten statements identified above, was revealed to that publication by DOD officials in violation of the Privacy Act. The ten statements from the article can be categorized according to the information contained as followed, using the numbers identified

above: 1) the fact of plaintiff's application for the Marshall Center job (1, 2, 3, 8); 2) the fact of plaintiff's termination from Pentagon job (2, 4); 3) Plaintiff's salary and GS-level at Pentagon job (5); 4) the GS-level and/or salary of Marshall Center position (6, 7); 5) Plaintiff's travel plans and leave plans (9); 6) the number of other applicants for Marshall Center position (10).

### 1. Disclosure of the Fact of Plaintiff's Job Application

Defendant has moved for summary judgment on plaintiff's Privacy Act claim arising out of the disclosure of the fact that plaintiff had applied for the Marshall Center position, arguing first, that this information was not maintained in a Privacy Act system of records, and second, that the person who disclosed this information to Stars and Stripes learned this information from plaintiff herself. The Privacy Act is a statute of specific and limited scope. Pursuant to the Privacy Act, the federal government is prohibited only from disclosing "any record which is contained in a system of records," as defined by the statute 5 U.S.C. § 552a(a)(4).

The Court agrees with plaintiff that there are disputed issues of material fact that preclude summary judgment on this issue and warrant further discovery. *See* Fed.R.Civ.P. 56(f). Because no discovery has been conducted at all in this case, defendants face a heavy burden in order to succeed on their summary judgment claims. Defendants have not demonstrated the absence of genuine issues of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In particular, the identity of the person who disclosed the information to Stars and Stripes, and whether the fact that plaintiff's job application was retrieved from a system of records are in dispute. It is only through discovery that plaintiff can

dispute defendants' claims that Mr. Kennedy revealed this information to the reporter, and that he learned this information from plaintiff rather than from an application form contained in a system of records protected by the Privacy Act.

### 2. Plaintiff's Termination from her Pentagon job

Plaintiff does not specifically allege in her complaint that the revelation of the fact of her termination, as reflected in two statements in the *Stars and Stripes* article, violates the Privacy Act. However, because her complaint does contain the general allegation that the article contained information gained from improper disclosures by DOD, *see* Complaint at ¶ 26, the Court will consider and address all of the statements in the article identified above. Defendant has not moved for either summary judgment or to dismiss any claim based on the disclosure of the fact that plaintiff was terminated. Therefore, plaintiff is free to investigate any such claim in discovery.

### 3. Disclosure of Plaintiff's GS-level and Salary at the Pentagon.

Plaintiff initially alleged that the revelation of both her GS-level and salary at her Pentagon job to the *Stars and Stripes* violates the Privacy Act. *See* Complaint at ¶ 26. However, in her opposition brief, plaintiff has eschewed any reliance on this claim: "This case is not about the release of salary information that was earned by Mrs. Tripp when she worked for DOD." Plfs' Opp. at 13. Therefore, any Privacy Act claim alleged by plaintiff based on the disclosure of salary information for her DOD job is dismissed.

### 4. Disclosure of the Salary and GS-level of the Marshall Center Position.

Plaintiff also alleges that the disclosure of the salary information related to the

Marshall Center job violated the Privacy Act. See Complaint at ¶ 26. Defendant has moved to dismiss this claim on several grounds: first, that such information is in the public domain and has no Privacy Act protection, and second, that this information was not "about" plaintiff and therefore plaintiff can allege no Privacy Act violation for its disclosure. The Court agrees with both of these arguments.

■ The GS-level and salaries of public officials are "information ... traditionally released by an agency to the public without a [ ] FOIA request," *Bartel v. FAA*, 725 F.2d 1403, 1413 (D.C.Cir.1984). Therefore, even if this information had been retrieved from a Privacy Act-protected system of records, the government is not prohibited from disclosing it pursuant to § 552a(b)(2); *see also* H.R. 93–1416, 93d Cong.2d Sess. at 13 (Oct. 2, 1974) (indicating that Congress did not intend the Privacy Act to prohibit the disclosure to the public of information such as "names, titles, salaries, and duty stations of most Federal employees"). In *Bartel,* the D.C. Circuit generally limited the application of § 552a(b)(2) to disclosures pursuant to an actual FOIA request, but recognized the exception to this general rule for information traditionally released to the public without such a request. The Court agrees that the names, titles, salaries, and salary-levels of public employees are information generally in the public domain. *See also National Western Life Ins. Co. v. United States,* 512 F.Supp. 454, 461 (N.D.Tex. 1980).

■ Second, the Privacy Act prohibits the disclosure of a "record." § 552a(b). A "record" is an item "of information about an individual." § 552a(a)(4). Further, in

order to be "about" an individual, the D.C. Circuit has stated that "the information must contain the individual's name or other identifying particular." *Tobey v. NLRB,* 40 F.3d 469, 471 (D.C.Cir.1994). It is not enough that the information "applies" to an individual in some way. *Id.* at 472. Applying this precedent, it is clear that the salary information for the Marshall Center position is not "about" plaintiff—the fact that she could receive that salary had she been chosen for the position does not convert this into information "about" plaintiff. Accordingly, this claim is dismissed.

### 5. *Plaintiff's Travel and Leave Plans*

Defendant has not moved to dismiss or for summary judgment with respect to the information in the article disclosed regarding plaintiff's travel plans. Therefore, any Privacy Act claim plaintiff has with respect to this information remains.

### 6. *Other Candidates for the Marshall Center Position.*

■ The information contained in the article regarding the other applicants for the Marshall Center position, see statement number 10 above, is not "about" plaintiff and therefore not protected by the Privacy Act, for reasons explained above. Any claim based on the disclosure of this information is dismissed.

### B. *Washington Post* Article

■ Plaintiff's Amended Complaint raises a new Privacy Act claim against DOD based on an article published in the *Washington Post* on February 11, 2000 entitled "No Low Profile, Linda Tripp's $98,744 Salary, Perks Draw Attention." See Amended Complaint, at ¶ 19; Def's Supp.Mot., Ex. E.[3] Plaintiff alleges that "information about plaintiff's job perfor-

---

**3.** Although plaintiff incorporated the contents of the article into her complaint by reference,

she did not attach that article to the com-

mance, time and attendance and leave and other details about plaintiff's employment" were disclosed to the *Washington Post* in violation of the Privacy Act. Defendants have moved to dismiss this claim, arguing that even if any of the information published in the article was contained in a Privacy Act-protected system of records, plaintiff had no privacy interest in any of that information. While review of the article in question reveals only basic information such as "[p]osition descriptions, identification of job elements, and those performance standards (but not actual performance appraisals)," the release of which regularly occurs pursuant to FOIA, 5 C.F.R. § 293.311, the article is only evidence of the disclosures plaintiff alleges to have occurred. Pursuant to recent authority from this Circuit, plaintiff's allegations are sufficient to state a claim. *See Krieger v. Fadely*, 211 F.3d 134 (D.C.Cir.2000) (reversing district court dismissal when plaintiff alleged only that unspecified "records" had been disclosed in violation of Privacy Act by former supervisor). Notably, defendants' reply does not respond to plaintiff's argument based on *Krieger*.

### C. Disclosure to Representative Moran

█ Plaintiff has also alleged that "DOD disclosed information about plaintiff and her employment to Representative James P. Moran, Jr." Complaint at ¶ 21. This paragraph is later incorporated into plaintiff's general claim that disclosures by DOD officials violated the Privacy Act. Complaint at ¶ 38–39. Pursuant to *Krieger*, 211 F.3d at 136, this is sufficient to state a claim.

### D. Other Privacy Act Claims

1. *552a(e)(6)*

█ In her Amended Complaint ¶ 41, plaintiff alleges that DOD failed to comply

with the requirements of § 552a(e)(6). This section states: "prior to disseminating any record about an individual to any person other than an agency, unless the dissemination is made pursuant to subsection (b)(2) of this section, make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes." *Id.* Defendant argues in response that "[b]ecause plaintiff does not claim that any information about her in the Amended Complaint was false in any way, this claim should be dismissed." Defs' Supp.Mot. at 8. This argument fails for several reasons. First, in order to prove a violation of 552(e)(6) the plaintiff need not prove that records are inaccurate, but rather incomplete, untimely, or irrelevant for agency purposes. But even more importantly, all this goes to what plaintiff must *prove* at a later stage of the case. Once again, defendant fails to appreciate the liberal pleading standard permitted by the Federal Rules of Civil Procedure. *See, e.g., Krieger*, 211 F.3d at 136. Plaintiff has sufficiently stated a claim here.

2. *552a(e)(9) and (10)*

█ Plaintiff also alleges that defendants have violated §§ 552a(e)(9) and (10). Amended Complaint at ¶¶ 42–43. Section 552a(e)(9) requires agencies to "establish rules of conduct for persons involved in the design, development, operation, or maintenance of any system of records, or in maintaining any record, and instruct each such person with respect to such rules and the requirements of this section, including any other rules and procedures adopted pursuant to this section and the penalties for noncompliance." Section 552a(e)(10) requires agencies to "establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records and to protect

plaint. Defendants included the article as an attachment.

against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained." Defendant argues that these claims should be dismissed because defendant has established DOD does not maintain a system of records for employment applications and therefore these claims are inapplicable. Def.Supp.Mot. at 8. On the contrary, defendant has *asserted* that no system of records exists, but as discussed above, this is a factual dispute inappropriate for resolution here. Because there may be a system of records at issue, to which the requirements of §§ 552a(e)(9) and (10) would apply, plaintiff has sufficiently stated a claim under these sections.

### 3. *552a(c)*

Finally, plaintiff has also alleged a violation of § 552a(c), *see* Amended Complaint at ¶ 44, which requires that an agency make an accounting of disclosures. Once again, defendant argues that this claim should be dismissed because none of the information allegedly disclosed came from a Privacy Act-protected system of records. Once again, there are genuine issues of material fact as to whether such systems existed. Plaintiff has sufficiently stated a claim.

### III. APA—Reverse FOIA Claims

Plaintiff alleges defendants violated the APA by releasing information without providing her notice, as requesting in her "reverse FOIA" letter of January 6, 2000. Defendant has moved to dismiss this claim, arguing that the APA can not provide a duplicate cause of action for alleged violations of the Privacy Act. *See* Defs' Mot. at 25. Plaintiff responds that her claim is not simply a duplication of her claim that these disclosures violated the Privacy Act, but is based on an independent claim that DOD violated her "reverse FOIA" request.

■ Although commonly known as reverse FOIA actions, cases like this one actually are brought under the APA, which provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . ., is entitled to judicial review thereof." 5 U.S.C. § 702. FOIA, as solely a disclosure statute, only provides a cause of action to compel disclosure, but not an action to prohibit disclosure. *See* 5 U.S.C. § 552(a)(4)(B); *Chrysler Corp. v. Brown*, 441 U.S. 281, 290–94, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979). Thus, success in reverse FOIA actions generally requires a showing that the agency's decision to disclose was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Chrysler*, 441 U.S. at 317–19, 99 S.Ct. 1705, 60 L.Ed.2d 208.

■ Thus, plaintiff must show that the release of the information at issue was somehow unlawful. In order to make this showing, plaintiff generally can not rely on a claim that a FOIA exemption requires the withholding of information from disclosure. With one very limited exception to be discussed below, FOIA exemptions *allow* agencies to withhold documents, but do not *require* withholding. *See Chrysler*, 441 U.S. at 293, 99 S.Ct. 1705, 60 L.Ed.2d 208 ("We simply hold here that Congress did not design the FOIA exemptions to be mandatory bars to disclosure."). Thus, some other law must *require* the agency to withhold the information for plaintiff to state a claim that agency action was not in accordance with law. However, plaintiff's complaint identifies no such law other than the Privacy Act. Defendant correctly argues that plaintiff can not bring an independent APA claim predicated on a Privacy Act violation. *See, e.g., Mittleman v. United States Treasury*, 773 F.Supp. 442 (D.D.C.1991).

Plaintiff's Amended Complaint clearly predicates her "reverse FOIA" claim on DOD's alleged violations of FOIA and the Privacy Act. The Amended Complaint states that her "reverse-FOIA" request was sent to President Clinton and Attorney General Reno to ensure DOD's compliance with its obligations under "the Freedom of Information and Privacy Acts." Amended Complaint at ¶ 52. She described her letter as "request[ing] defendants to treat FOIA requests with respect to plaintiff in a manner fully consistent with the requirements of the FOIA and Privacy Act." *Id.* at ¶ 53. Furthermore, she alleges that the release of documents violated the APA and the FOIA, and in particular, "defendants' improper release of information about plaintiff to third parties without plaintiff's consent were in violation of several FOIA exemptions, including but not limited to 5 U.S.C. §§ 552(b)(5), (b)(6), (b)(7)(A), and (b)(7)(C)." *Id.* at ¶ 55.

Plaintiff's APA claim can not be based on an alleged violation of FOIA caused by *the release* of this information. As discussed above, the provisions of FOIA allow agencies to withhold documents, but do not *require* agencies to withhold those documents. There is one limited exception to this general rule. In *SafeCard Services, Inc. v. SEC,* 926 F.2d 1197, 1206 (D.C.Cir. 1991), the D.C. Circuit established a categorical rule that FOIA Exemption 7(C) prohibits an agency from releasing documents that include the names and addresses of individuals in files that are compiled for law enforcement purposes. This Court recently relied on this case to allow a reverse FOIA claim under the APA based on the release of such names to proceed based, in part, on the argument that the agency acting unlawfully by releasing information that Exemption 7(C) requires to be withheld. *See AFL—CIO v. Federal Election Commission,* 177 F.Supp.2d 48 (D.D.C.2001). The information about which plaintiff complains, however, exceeds the very limited scope of Exemption 7(C). Plaintiff's reverse FOIA claim is based on the release of:

> information related to and contained in plaintiff's personnel files, plaintiff's job performance, time and attendance, plaintiff's leave, other details about plaintiff's employment, plaintiff's application for employment with the Marshall Center, the selection of plaintiff for the certified list of eligible or best qualified candidates for the Marshall Center position, plaintiff's travel orders, plaintiff's potential salary if selected for the Marshall Center position.

Amended Complaint at ¶ 55. First, there is no allegation that any *documents* were released at all and therefore FOIA Exemption 7(C) could not have been violated at all. Second, the only information that Exemption 7(C) prohibits the release of is the name and address of individuals contained in law enforcement files. None of the above information falls into this limited category. Plaintiff argues that this Court's ruling in *AFL—CIO v. Federal Election Commission,* supports the broader proposition that a reverse FOIA claim "against an agency for violating FOIA exemptions was actionable under the APA." Plfs' Notice of Filing of 1/8/2002. This is not the holding of this case. *AFL—CIO* goes only so far as to say that FOIA prohibits the release of the limited category of 7(C) information discussed above. All other FOIA exemptions are within the discretion of the agency to waive. *See Chrysler,* 441 U.S. at 293, 99 S.Ct. 1705.

█ Thus, plaintiff can not claim that DOD acted unlawfully by exercising its discretion to release the information to which a FOIA exception other than 7(C) allegedly applies, unless that release was prevented by another statute. One such other statute is the Privacy Act, but as

discussed above, plaintiff can not predicate her APA claim on a Privacy Act violation. Plaintiff's Amended Complaint identifies no other statute on which her APA claim of unlawful action is based. In contrast, in *Chrysler Corp. v. Brown*, 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979), the plaintiff alleged that the agency's release of information violated the APA because an independent statute, the Trade Secrets Act prohibited such release. *See also, e.g., CNA Financial Corp. v. Donovan*, 830 F.2d 1132 (D.C.Cir.1987) (disclosure allegedly violated Trade Secrets Act); *AFL—CIO*, 177 F.Supp.2d at 55 (disclosure decision violated Federal Election Campaign Act). Therefore, because plaintiff has not alleged any independent statutory basis for finding that DOD's release of information was unlawful, Count Two of her Amended Complaint must be dismissed.[4]

### IV. FOIA and Privacy Act Requests

#### A. Privacy Act Request

Plaintiff's Amended Complaint alleges the following relevant facts: on January 25, 2001, plaintiff submitted a joint FOIA and Privacy Act request for certain categories of documents related to herself, as described above. On March 21, 2001, after several appeals of the constructive denial of her request, DOD sent plaintiff a letter stating that 1096 responsive records were found in the Office of the Secretary of Defense, for which plaintiff owed $1,253.15. The Amended Complaint does not state whether plaintiff paid these fees or received the documents. On April 11, 2001, DOD also responded to the Privacy Act portion of her request by stating that plaintiff had "been provided all responsive

documents contained with [Privacy Act] systems of records" and that "this response completes the processing of the [Privacy Act] portion of" plaintiff's January 25, 2001 request.

Plaintiff alleges that DOD has wrongfully processed her Privacy Act request as a FOIA request, and therefore charged her fees under FOIA that would not be assessed pursuant to the Privacy Act. Once again the parties' dispute centers around whether any responsive documents are contained in a Privacy Act system of records. Defendant maintains that it has proven by virtue of its submitted declarations that no such systems exist for plaintiff's job application to the Marshall Center, the subject of much of her January 25, 2001 request.

In so far as defendant is moving for summary judgment on plaintiff's Privacy Act claim based on its assertion that there are no responsive documents in Privacy Act systems of records, that motion is premature because plaintiff has been accorded no discovery on this issue. Pursuant to Rule 56(f), defendant's motion for summary judgment on plaintiff's Privacy Act request is denied. Plaintiff shall be afforded appropriate discovery into whether there are any relevant Privacy Act systems of records at DOD.

#### B. FOIA Request

With respect to the request for documents pursuant to FOIA, plaintiff alleges that her request for a fee waiver and expedited processing have been wrongfully

---

**4.** Plaintiff later attempts to argue that the independent law that *requires* withholding this information is one of DOD's regulations, 32 C.F.R. § 286.12(f). *See* Plfs' Opp. at 44. Even if this regulation could provide the basis for plaintiff's claim that DOD violated the APA, plaintiff clearly did not include such

allegations in her Amended Complaint. Plaintiff alleged *only* that her reverse-FOIA request was intended to enforce DOD's obligations under FOIA and the Privacy Act. Such allegations do not state a claim for a violation of the APA.

denied. Defendants have moved for summary judgment on both issues.

### 1. *Denial of Expedited Processing*

 This Court reviews denials of expedited processing of FOIA requests *de novo. See, e.g., Al–Fayed v. CIA,* 254 F.3d 300, 305 (D.C.Cir.2001). With respect to requests for expedited processing, FOIA states:

Each agency shall promulgate regulations, pursuant to notice and receipt of public comment, providing for expedited processing of requests for records—(I) in cases in which the person requesting the records demonstrates a compelling need; and (II) in other cases determined by the agency.

5 U.S.C. § 552(a)(6)(E)(i). FOIA further defines compelling need to include:

(I) that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or

(II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.

§ 552(a)(6)(E)(v). Finally, FOIA requires that

A demonstration of a compelling need by a person making a request for expedited processing shall be made by a statement certified by such person to be true and correct to the best of such person's knowledge and belief.

§ 552(a)(6)(E)(vi).

Plaintiff sought expedited consideration pursuant to § 552(a)(6)(E)(v)(II). DOD has promulgated regulations that further define "compelling need." 32 C.F.R. § 286.4(d)(3) defines "compelling need" to mean:

the information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged federal government activity.

32 C.F.R. § 286.4(d)(3)(ii). Those regulations further define "an individual primarily engaged in disseminating information" to include:

person whose primary activity involves publishing or otherwise disseminating information to the public ... Other persons must demonstrate that their primary activity involves publishing or otherwise disseminating information to the public.

32 C.F.R. § 286.4(d)(3)(ii)(A). Finally, "urgently needed" means that the information requested:

has a particular value that will be lost if not disseminated quickly. Ordinarily, this means a breaking news story of general public interest.

32 C.F.R. § 286.4(d)(3)(ii)(A).

As an initial matter, it appears to the Court from the record that plaintiff has never satisfied the requirement of § 552(a)(6)(E)(vi), and that her request for expedited processing could be denied strictly on that basis. However, because neither party has briefed this issue, and the record before the Court of plaintiff's requests to DOD may be less than complete, the Court will address the substance of the parties' arguments.

 DOD correctly determined that plaintiff does not meet the established criteria for expedited processing. In particular, plaintiff has not established by any evidence that she is primarily engaged in the activity of disseminating information. 32 C.F.R. § 286.4(d)(3)(ii)(A). To be sure, plaintiff has been the object of media attention, and has at times provided information to the media, but no evidence in the record support's plaintiff's assertion that she is "primarily" engaged in such efforts.

Furthermore, there is no "urgent need" for this information. *Id.* The events at issue occurred over three years ago. To the court's knowledge, plaintiff's job application to the Marshall Center and the resulting alleged Privacy Act violations by DOD are not the subject of any breaking news story.

Finally, plaintiff's argument that the government's alleged "leaking information about an individual to other parties but denying the individual's access to that information" is impermissible under FOIA and justifies her expedited treatment, assumes the outcome of this lawsuit. Plaintiff has yet to prove the existence of any such "leaks." Furthermore, the cases on which plaintiff relies, *Whitehead v. FBI*, No 96–572 (D.D.C. Feb. 5, 1997) allowed for an expedited request when information that had already been released to other FOIA requesters. Plaintiff has not shown the existence of any other such requesters here. For all these reasons, DOD properly denied plaintiff's request for expedited consideration.

### 2. *Fee Waiver Request*

Plaintiff also requested a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii), *see* Defs' Supp.Opp.Ex. F, which DOD also denied. Defs' Supp.Opp.Ex. G. This decision is also reviewed *de novo*, and "looking only to the administrative record before the agency at the time of the decision." *D.C. Technical Assistance Org., Inc. v. U.S. Dept. of Housing and Urban Development*, 85 F.Supp.2d 46, 48 (D.D.C.2000); *see also, e.g., Larson v. CIA*, 843 F.2d 1481, 1482 (D.C.Cir.1988). FOIA states that in order to qualify for a fee waiver, a requestor must show that "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C.

§ 552(a)(4)(A)(iii). Furthermore, "[c]ourts have determined that conclusory statements about contributions to public understanding are not enough to satisfy this factor." *Judicial Watch, Inc. v. U.S. Dept. of Justice*, 122 F.Supp.2d 13, 18 (D.D.C. 2000).

DOD denied plaintiff's fee waiver request on the ground that there was "no great news media interest in the subject matter of the requested information. Rather, the interest is in Ms. Tripp herself. The fact that a person is the object of media interest does not qualify that person for a waiver of fees incurred by the government in processing of a FOIA request." Defs' Supp.Mot., Ex. O. DOD thus applied the incorrect standard in denying plaintiff's fee waiver request. The appropriate inquiry, as defined by the statute, is whether the information will "contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii). If so, the agency must then determine whether the information is "not primarily in the commercial interest of the requester." *Id.* The question is not whether there is "great news media interest" in the information, but rather whether that information will show the public something about the government. Because DOD applied the incorrect standard, the denial of plaintiff's fee waiver request is vacated and remanded to the agency for further consideration.

## V. Proper Defendants

### A. The Office of Personnel Management

OPM is named as a defendant in Count III of Plaintiff's Amended Complaint. Defendants have moved to dismiss any claims against OPM, arguing that plaintiff has admitted that OPM has no responsive documents, and that plaintiff seeks documents from DOD over which OPM has no control.

Because plaintiff never filed a FOIA request with OPM, plaintiff has no FOIA claim against OPM. With respect to the Privacy Act, however, OPM's regulations appear to provide for judicial review of appeals to OPM of other agencies' denials of Privacy Act requests, even though the request was not made directly to OPM. *See* 5 C.F.R. § 297.208. Plaintiff did appeal DOD's denial of her Privacy Act request to OPM, pursuant to OPM's regulations. *See* Amended Complaint at ¶ 72. OPM upheld the denial of that request.

Defendants argue that OPM should be dismissed because OPM does not have any responsive documents. This argument misses the point of plaintiff's challenge to the action taken by OPM—plaintiff is challenging its denial of the appeal pursuant to 5 C.F.R. § 297.208. Because the parties have not fully briefed the issue of how these regulations can give rise to a Privacy Act claim against OPM when plaintiff never filed a Privacy Act request with OPM, defendant's motion to dismiss the claims against OPM is denied without prejudice.

### B. United States of America

Defendants have moved to dismiss the United States of America as not a properly named defendant pursuant to plaintiff's Privacy Act, APA, and FOIA claims because those claims must be addressed to a particular "agency." Plaintiff does not respond to this argument in any of her briefs, and therefore the Court will consider it conceded by plaintiff. The United States of America is dismissed as a defendant.

### VI. *Requested Declaratory and Injunctive Relief*

Defendants argue that plaintiff's requested injunctive relief is beyond the scope of any of her claims. Because plaintiff's APA claim has been dismissed, the declaratory and injunctive relief requested pursuant to the APA is no longer at issue.

Any relief granted to plaintiff will be limited to her Privacy Act and FOIA claims.

### CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that defendants' motions to dismiss and for summary judgment are **GRANTED IN PART** and **DENIED IN PART;** it is

**FURTHER ORDERED** that defendants' motion for summary judgment is **DENIED** with respect to plaintiff's Count One Privacy Act claim based on the alleged disclosure of plaintiff's job application to the Marshall Center; it is

**FURTHER ORDERED** that defendants' motion to dismiss is **GRANTED** with respect to plaintiff's Count One Privacy Act claim based on the alleged disclosure of any salary information for plaintiff's DOD job or the Marshall Center job; it is

**FURTHER ORDERED** that defendants' motion to dismiss is **GRANTED** with respect to plaintiff's Count One Privacy Act claims based on the alleged disclosure of the other candidates for the Marshall Center position; it is

**FURTHER ORDERED** that defendants' motion to dismiss is **DENIED** with respect to plaintiff's Count One Privacy Act claims based on the alleged disclosure to the *Washington Post;* it is

**FURTHER ORDERED** that defendants' motion to dismiss is **DENIED** with respect to plaintiff's Count One Privacy Act claims based on the alleged disclosure to Representative Moran; it is

**FURTHER ORDERED** that defendants' motion to dismiss is **DENIED** with respect to plaintiff's Count One Privacy Act claims based on alleged violations of 5 U.S.C. §§ 552a(c), 552a(e)(6), 552a(e)(9), and 552a(e)(10); it is

244

**FURTHER ORDERED** that defendants' motion to dismiss is **GRANTED** with respect to plaintiff's Count Two reverse-FOIA APA claim; it is

**FURTHER ORDERED** that defendants' motion for summary judgment is **DENIED** with respect to plaintiff's Count Three Privacy Act claim; it is

**FURTHER ORDERED** that defendants' motion for summary judgment is **GRANTED** with respect to plaintiff's Count Three FOIA claim based on the denial of her request for expedited processing; it is

**FURTHER ORDERED** that defendants' motion for summary judgment is **DENIED** with respect to plaintiffs' Count Three FOIA claim based on the denial of her request for a fee waiver; it is

**FURTHER ORDERED** that defendants' motion to dismiss all claims against the United States of American is **GRANTED;** it is

**FURTHER ORDERED** that defendants' motion to dismiss plaintiff's Count Three FOIA claim against OPM is **GRANTED;** it is

**FURTHER ORDERED** that defendants' motion to dismiss plaintiff's Count Three Privacy Act claim against OPM is **DENIED WITHOUT PREJUDICE;** it is

**FURTHER ORDERED** that defendants shall file an appropriate responsive pleading by no later than **Friday, April 12, 2002;** it is

**FURTHER ORDERED** that the parties shall file a meet and confer report by no later than **Friday, April 19, 2002;** it is

**FURTHER ORDERED** that an initial scheduling conference shall be held **Fri-**day, April 26, 2002, at 10:00 a.m. in Courtroom One.

**IT IS SO ORDERED.**